**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**INTERNATIONAL UNION, UNITED**
**AUTOMOBILE, AEROSPACE AND**
**AGRICULTURAL IMPLEMENT WORKERS**
**OF AMERICA, UAW and its WEST SIDE,**
**LOCAL 174,**

        **Plaintiff,**

                                         **Case No. 05-74042**

**v.**

                                       **HONORABLE DENISE PAGE HOOD**

**MICHIGAN MECHANICAL SERVICES, INC.**

        **Defendant.**

_____/

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

      This matter is before the Court on Plaintiff's Motion for Summary Judgment.  Defendant

filed a Response on December 23, 2005.  Plaintiff filed a Response to Defendant's Brief in

Opposition to Motion For Summary Disposition on December 30, 2005.  On January 5, 2006,

Defendant filed a Reply to Plaintiff's Response in Opposition to Motion for Summary Judgment.

**II.     STATEMENT OF FACTS**

      Plaintiff, UAW Local 174, is a labor organization representing bargaining unit member

Richard Hilton ("Grievant Hilton").  (Compl. ¶¶ 1, 5).  Defendant, Michigan Mechanical Services,

Inc., entered into a collective bargaining agreement with Plaintiff, in which the parties agreed to a

1

grievance procedure ending in final and binding arbitration. (Compl. ¶ 4). Grievant Hilton was employed with the Defendant and was terminated. (Compl. ¶ 6). On or about June 6, 2005 the parties submitted a grievance for resolution by arbitration. The grievance had been filed by the Plaintiff protesting the termination of Grievant Hilton. (Compl. ¶ 5). On or about August 10, 2005, Arbitrator Peter D. Jason ("Arbitrator") issued an award granting Plaintiff's grievance, overturning Grievant Hilton's termination, reinstating Grievant Hilton's employment and requiring Defendant to provide Grievant Hilton with back pay and benefits. (Compl. ¶ 6). The Arbitrator also ordered a three day suspension in lieu of discharge. (Def.'s Resp., Ex. 8). Defendant has refused to comply with the Arbitrator's award by failing to reinstate Grievant Hilton to his pre-termination employment status. (Compl. ¶ 7). The Complaint was filed on October 21, 2005.

## III.   STANDARD OF REVIEW

The standard that must be satisfied to secure a dismissal via summary judgment is high. Pursuant to Rule 56(c), summary judgment may only be granted in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing no dispute as to any material issue. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). A dispute must be apparent from the evidence in order to deny such a motion. Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence. Fed.R.Civ.P. 56(e). When ruling, the Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

2

IV.    **APPLICABLE LAW & ANALYSIS**

Plaintiff seeks the enforcement of the arbitration award, pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. (Compl. ¶¶ 1-2). Arbitration cases have a very narrow standard of review. *Dobbs, Inc. v. Local No. 614, Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen and Helpers of Am.*, 813 F.2d 85, 86. A court reviewing an arbitration award must give deference to the arbitrator's findings of fact. *DBM Technologies, Inc. v. Local 227, United Food & Commercial Workers Int'l Union*, 257 F.3d 651, 656 (6th Cir. 2001). "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steel Workers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *Retail Clerks Int'l Assoc., Local Unions Nos. 128 and 633 v. Lion Dry Goods, Inc.*, 341 F.2d 715, 720 (6th Cir. 1965). The Court must determine if the arbitrator's award "draws its essence from the collective bargaining agreement." *Spero Elec. Corp. v. International Bhd. Of Elec. Workers, AFL-CIO*, 439 F.3d 324, 328 (6th Cir. 2006)*, Dobbs*, 813 F.2d at 86, quoting *Detroit Coil v. International Association of Machinists & Aerospace Workers, Lodge No. 82*, 594 F.2d 575, 579 (6th Cir. 1979). "The arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions." *Dobbs*, 813 F.2d at 86, quoting *Detroit Coil*, 594 F.2d at 579 (internal quotations omitted). The Sixth Circuit has held:

> An arbitrator's award fails to draw its essence from the agreement when: (1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on general considerations of fairness and equity instead of the exact terms of the agreement."

*Spero*, 439 F.3d at 328 (internal quotations omitted), *Dobbs*, 813 F.2d at 86. The Court is bound to

enforce the arbitration award and cannot review the merits of the contract dispute, unless the arbitration award does not draw its essence from the collective bargaining agreement. *W.R. Grace and Co. v. Local Union 759, Int'l. Union of the United Rubber, Cork, Linoleum and Plastic Workers of Am.*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182 (1983).

Defendant argues that the arbitrator's award failed to draw its essence from the collective bargaining agreement, because the agreement expressly authorized Grievant Hilton's termination, for either refusing to take a drug test and/or using or possessing drugs at work. Plaintiff argues that the findings of the arbitrator are conclusive as to the facts and the language of the agreement suggests that exceptions are available. The parties have agreed to a collective bargaining agreement with an effective date of April 5, 2003 to April 5, 2006. (Def.'s Resp., Ex. 1). The pertinent part of the agreement reads:

> **Section 29.**    Personal Conduct Rules: During negotiations for this Agreement, the Company and the Union discussed and negotiated Personal Conduct Rules, which the parties believe will create a better and more effective and efficient work environment for everyone. This Agreement incorporates these rules by reference.

(Def.'s Resp., Ex. 1). The Personal Conduct Rules provide:

> Violating an immediate discharge rule will *usually* result in immediate discharge, even for a first offense.
>
> \*                    \*                    \*
>
> These rules do not replace, but rather supplement, the "Company Substance Abuse Policy," the "General Safety Rules and Procedures," and the "Attendance and Punctuality" policy. *If these rules in any way conflict with these other policies, these rules govern.*
>
> \*                    \*                    \*
>
> VIOLATION OF ANY OF THE FOLLOWING RULES WILL *GENERALLY* RESULT IN IMMEDIATE DISCHARGE:

4

\*                     \*                     \*

7.      Insubordination or refusal to follow a direct order from a supervisor, including refusal to take a required drug test.

(Def.'s Resp., Ex. 6) (emphasis added).  The Company Substance Abuse Policy reads in relevant

part:

> <u>Possession</u> - All employees possessing alcohol or drugs on Company property will be subject to disciplinary action up to and including discharge.
>
> <u>Refusal</u> - All employees who refuse to take a substance screening will be subject to disciplinary action:
> 1st refusal - 3 days off
> 2nd refusal - Voluntary termination.
> Once an employee has had a confirmed positive substance screening, they may not refuse to take a substance screening at a future date.  Refusal will be considered a voluntary quit.

(Def.'s Resp., Ex. 7).  The General Safety Rules and Procedures state:

> **Security Rules and Procedures for All Employees**
>
> 1. Alcohol and Drugs - The possession, use or being under the influence of alcohol or drugs on Michigan Mechanical Services, Inc. or customer's property (including parking lots) is a potential safety hazard and is strictly prohibited.  Any person violating this rule will be permanently barred from the plant.

(Def.'s Resp., Ex. 4).  Finally, the Disciplinary Action Schedule states that employees will be

discharged, on a first offense, for "Improper use, possession or selling of alcohol or a controlled

substance on company property; Reporting to or working under the influence of either."  (Def.'s

Resp., Ex. 5).  The Disciplinary Action Schedule further asserts that for a first offense of

insubordination the punishment will be either a written warning or discharge. (Def.'s Resp., Ex. 5).

First the Arbitrator held that there was insufficient evidence to determine that Grievant

Hilton had abused drugs or alcohol in customer facilities or on Defendant's property.  As such, the

Arbitrator found that the Defendant did not have proper cause to discharge Grievant Hilton for using

5

drugs or alcohol on Defendant's or customer's property.  Defendant argues that the Arbitrator erred

in this finding because the Grievant admitted possessing and using drugs on the job.  Defendant

claims that the "undisputed record evidence" was that Grievant Hilton admitted possessing and using

drugs on the work site.  In support of this contention, Defendant submits the affidavit of Scott Smith,

President of Defendant, wherein Mr. Smith states:

> 18.     Mr. Hilton admitted the charges against him, and, although he asked for his
> job back, he remained defiant, and his situation was different in multiple
> respects.

(Def.'s Mot. Summ. J., Ex. 2, ¶ 18).  Mr. Smith apparently so testified at the hearing and Defendant

claims the statement of Grievant Hilton was admitted as a party admission.  (Def.'s Mot. Summ. J.,

Ex. 9).  Defendant also claims that the Plaintiff "did not even attempt to deny this fact either in the

hearing or in its brief."  (Def.'s Mot. Summ. J. at 7).

It is not clear to the Court what evidence supports Defendant's assertion that Grievant Hilton

has admitted possessing and using drugs other than Mr. Smith's testimony.  The arbitration decision

noted that when Mr. Smith and Grievant Hilton spoke, Grievant Hilton claimed he had been falsely

accused.  (Def.'s Mot. Summ. J, Ex. 9 at 2).  The Arbitrator also noted that Grievant Hilton "never

admitted or denied he used alcohol or drugs at work."  (Def.'s Mot. Summ. J, Ex. 9 at 5).  Although

the Arbitrator's letter of September 6, 2005, (Def.'s Mot. Summ. J, Ex. 11), states that the notes he

relied upon did not show that Mr. Smith testified that Grievant Hilton admitted using drugs on the

job, the letter is not part of the Arbitrator's decision, nor does it indicate that the Arbitrator did not

draw his decision from the essence of the collective bargaining agreement.

As stated before, a reviewing court must give deference to an arbitrator's findings of fact.

*DBM Technologies*, 257 F.3d at 656.  The Sixth Circuit has further held:

> The reason for this deference is the explicit statutory policy giving preference to the private settlement of labor disputes.  Thus, when a collective bargaining agreement provides for a private mechanism of arbitrating a dispute, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.  To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them.

*Id*. (internal citations omitted).  As such, the Court may not review the factual findings of the arbitrator and is instead limited to determining whether the arbitrator's award draws its essence from the collective bargaining agreement.  *Id*.

The Arbitrator also held that discharge was improper for the offense of refusing to take a drug test.  The Arbitrator noted the contradictory disciplinary language in the General Safety Rules and Regulations, the Company's Substance Abuse Policy, and the Personal Conduct Rules.  The Arbitrator also acknowledged that the Personal Conduct Rules govern in the event of conflicting rules.  Based on the suggestive language of the Personal Conduct Rules provision regarding the refusal to take a drug test, the Arbitrator found that discharge was too severe.  The Arbitrator held:

> Finally, the company cited the Personal Conduct Rules.  The company testified that these rules were negotiated with the union and incorporated into the CBA by reference.  It cites these rules for the proposition that it has discretion to impose immediate discharge for a first offense of some rules, and then cited **Rule 7... *"Insubordination or refusal to follow a direct order from a supervisor, including refusal to take a required drug test." "Violation of this Rule will generally result in immediate discharge."*** Even though this rule conflicts with the Substance Abuse Policy, the company argued the Personal Conduct Rules take precedent.  This is surely the company's best argument in support of its discharge decision, but I find that a discharge in this instance is not proper.  The Personal Conduct Rules state that violation of the insubordination rule will generally result in immediate discharge. That suggests that exceptions to the rule are possible.  As previously mentioned, the specific rule in the Substance Abuse Policy says that refusal of the drug test is grounds for a three day suspension.  Given this conflict in the rules, even though the Personal Conduct Rules take precedent, I find that a discharge for refusing the test

7

> is not proper because grievant was relying on the Substance Abuse Policy and was
> not told at the time the drug test was administered that he would be discharged for
> refusing.

(Def.'s Resp., Ex. 8) (emphasis in original).  The Arbitrator was convinced by use of the term

"generally" in the Personal Conduct Rules that exceptions to the rule were possible, and that given

the language in the Substance Abuse Policy requiring a three day suspension on a first offense of

refusing to take a drug test, an exception was warranted in this case.

On examination of the Arbitrator's decision and the collective bargaining agreement between

the parties, the Court finds that the Arbitrator did not rule outside the essence of the collective

bargaining agreement.   As provided in the collective bargaining agreement, the Personal Conduct

Rules are incorporated into the parties' agreement.   The Personal Conduct Rules state: (1) the

violation of an immediate discharge rule will *usually* result in immediate discharge, and that (2)

violation of the insubordination rule, including the refusal to take a required drug test, *generally* will

result in immediate discharge.  (Def.'s Ex. 6).   The pertinent provisions of the Personal Conduct

Rules do not use mandatory language when stating the proper discipline for the alleged offenses.

Further, language in the Company Substance Abuse Policy stating that (1) employees possessing

or using drugs or alcohol on Defendant's property are subject to "disciplinary action *up to and

including* discharge," and (2) the disciplinary action for the first offense of refusing to take a drug

test is a three day suspension, suggests the existence of alternative punishments aside from

discharge.  Based on the language of the collective bargaining agreement and the Personal Conduct

Rules, the Arbitrator's award requiring a three day suspension is not contrary to the essence of the

parties' agreement.  As such, Plaintiff's motion for summary judgment is granted.

Accordingly,

8

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment **[Docket No. 4, filed December 2, 2005]** is GRANTED.


   /s/ Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED August 29, 2006




I hereby certify that a copy of the foregoing document was served upon counsel of record on August 29, 2006, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager